IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CYNTHIA RYAN,

Plaintiff,

v.

THE STANDARD FIRE INSURANCE COMPANY, a foreign insurance company,

Defendant.

Case No. 3:24-cv-01866-AB

OPINION & ORDER

Tyler E. Staggs
Tom C. Spooner
SPOONER STAGGS TRIAL LAWYERS
530 Center Street N.E., Suite 712
Salem, OR 97301

Attorneys for Plaintiff

John T. Brooks
Jeffrey V. Commisso
Jocelyn J. Whiteley
SHEPPARD MULLIN RICHTER & HAMPTON LLP
501 West Broadway, 18th Floor
San Diego, CA 92101

Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiff Cynthia Ryan brings claims for breach of contract and negligence against her former insurer, Defendant The Standard Fire Insurance Company. This case arises out of Defendant's cessation of payments for medical expenses after an independent medical examiner concluded Plaintiff had recovered from injuries sustained in a car accident. Both Plaintiff and Defendant now move for summary judgment. Pl.'s Mot. Partial Summ. J. ("Pl.'s PMSJ"), ECF No. 41; Def.'s Mot. Summ. J. ("Def.'s MSJ"), ECF No. 40. The Court held oral argument on September 16, 2026, and ordered supplemental briefing on Plaintiff's breach of contract claim. *See* Mins. of Proceedings, ECF No. 56. For the reasons that follow, the Court grants in part and denies in part Defendant's Motion and denies Plaintiff's Motion.

**BACKGROUND**

Plaintiff's insurance claim stems from injuries sustained in a car accident on January 29, 2022. Plaintiff first visited her doctor's office two days after the accident. Craig Decl. Ex. 3.[1] She reported that she had "[n]o pain immediately following the accident but reported gradual development of L anterior and posterior shoulder pain with decreased ROM d/t pain." *Id.* at 1. She reported her pain at "1/10" but "worse with palpation." *Id.* Her medical provider diagnosed Plaintiff with a left shoulder strain and recommended she go to physical therapy, "[a]dvised heat and gentle stretching," and instructed her to take ibuprofen three times a day. *Id.* at 3. The provider also told Plaintiff to follow up if her symptoms worsened or had not improved in four weeks. *Id.*

---

[1] The Craig Declaration, Whiteley Declaration, and associated exhibits can be found at ECF Nos. 40-1, 40-3, and 40-4. The Staggs Declaration and Exhibits 1 to 24 can be found at ECF No. 42, and Exhibits 25 to 36 can be found at ECF No. 48. The Supplemental Staggs Declaration and Exhibits 38 to 41 can be found at ECF No. 58.

The same day Plaintiff saw her medical provider, Plaintiff filed a medical claim under her auto insurance policy. Craig Decl. Ex. 2, at 121–26.[2] Plaintiff provided a statement to one of Defendant's claims representatives—Ashley Craig—describing her injuries. *Id.* at 120; Staggs Decl. Ex. 5, at 1. Plaintiff told Ms. Craig she had no shoulder pain or injury prior to the accident, Staggs Decl. Ex. 5, at 2, 4–5; Staggs Decl. Ex. 20, at 51:19–52:14, and she reported having pain in her neck, lower abdomen, and shoulder because of the accident, Craig Decl. Ex. 2, at 120; Craig Decl. ¶ 6. Plaintiff told Ms. Craig that her medical provider recommended physical therapy. Staggs Decl. Ex. 5, at 2. She also requested acupuncture and massage, which Plaintiff had previously received to treat osteoarthritis in her lower back. *Id.*; Craig Decl. Ex. 2, at 121; Craig Decl. ¶ 6. Ms. Craig informed Plaintiff that soft-tissue injuries normally resolve in six to twelve weeks, explained that they would check in with Plaintiff to see how her treatment was progressing, and described Defendant's claim handling procedures, including the possible use of a nurse or independent doctor. Craig Decl. Ex. 2, at 121; Craig Decl. ¶ 7.

Defendant also followed up with an email explaining how Personal Injury Protection ("PIP") and Medical Payments Coverage ("Med Pay") work. Craig Decl. Ex. 2, at 117–18; Craig Decl. ¶ 8. Under the terms of Plaintiff's policy, Defendant provided $15,000 in PIP benefits and an additional $10,000 in Med Pay for bodily injuries sustained by an insured in an accident. *See* Craig Decl. Ex. 1, at 1, 13–18 (Coverage C and Coverage Q). Consistent with the terms of the policy, Plaintiff began seeking care for her injuries, and Defendant paid Plaintiff's medical bills for her treatment, including physical therapy, chiropractic treatment, and massage. Craig Decl. ¶¶ 9, 13.

[2] Page numbers in Exhibit 2 to the Craig Declaration refer to the claim file's pagination and not to the PDF page numbers.

Except for her left shoulder, Plaintiff's injuries had largely healed by summer 2022. Staggs Decl. Ex. 17 ("Pl.'s 2024 Dep.") 33:14–34:8. In May, Plaintiff's chiropractor reported to Defendant that Plaintiff's symptoms were 90% improved with the occasional flare-up during long or weighted hikes. Craig Decl. ¶ 11, Ex. 5. Providers told Ms. Craig that Plaintiff only needed two to four more sessions of chiropractic care and a few more sessions of physical therapy. *Id.* Based on this information, Ms. Craig believed that Plaintiff's treatment was nearing an end. *See, e.g.*, Craig Decl. Ex. 2, at 69, 76, 92; Craig Decl. ¶ 11.

Then, Plaintiff saw Dr. Maheshwari, DO, at Kaiser on June 23, 2022, for follow-up care related to her ongoing shoulder pain. Staggs Decl. Ex. 9. Dr. Maheshwari diagnosed Plaintiff with left shoulder pain, left upper arm pain, and calcific tendinitis of the left shoulder based on x-ray imaging. *Id.* at 1. He opined that the calcific tendinitis was likely asymptomatic because "there aren't many symptoms with overhead activity." *Id.* He also suspected a "labral pathology with intermittent clicking and limitation in internal range of motion." *Id.* Dr. Maheshwari recommended further imaging if Plaintiff's pain did not improve. *Id.*

Because Kaiser did not bill PIP, Defendant did not initially get copies of Plaintiff's Kaiser records. Craig Decl. Ex. 2, at 59. Rather, on June 28, 2022, Plaintiff's chiropractor informed Defendant of Plaintiff's appointment with Dr. Maheshwari, noting that Plaintiff's left shoulder injury "has been struggling to resolve since the [motor vehicle accident]" and that she was referred for an MRI because of a tear. Craig Decl. ¶ 12, Ex. 2, at 68. Plaintiff's attorney also provided Ms. Craig with a copy of the records and x-ray on July 20, 2022. Craig Decl. Ex. 2 at 59–60. In response, Ms. Craig asked for a release of information to obtain the Kaiser records and received copies of those records. *Id.* at 54–58.

After becoming aware of Plaintiff's appointment with Dr. Maheshwari, Ms. Craig consulted an in-house nurse, who suggested they request an independent medical examination ("IME") to assess the injury. Craig Decl. Ex. 2, at 58, 63–65. And on July 14, Ms. Craig sent Plaintiff a letter advising her that Defendant would not pay any additional medical expenses pending the IME results. Staggs Decl. Ex. 8, at 4. Plaintiff stopped seeing her physical therapist because she was concerned about costs. Staggs Decl. Ex. 18 ("Pl.'s 2025 Dep.") 24:19–24, 26:16–27:14.

Plaintiff underwent an IME on September 12, 2022, with orthopedic surgeon William Bell, MD. Craig Decl. Ex. 2, at 53. Defendant uses a "blind round robin process to select . . . the vendor [that] selects an appropriate doctor . . . from their roster of professionals, without [Defendant's] input." Craig Decl. ¶ 20. In this case, Defendant's process selected ExamWorks as the vendor, who then selected Dr. Bell as the provider for the IME. *Id*. Dr. Bell has more than forty-five years of experience as a board-certified orthopedic surgeon. Bell Decl. ¶ 2, ECF No. 40-2.

In his IME report, Dr. Bell noted that Plaintiff experienced head, neck, and shoulder symptoms after the accident. Staggs Decl. Ex. 10, at 2. He also noted that Plaintiff's head and neck symptoms had completely improved but that Plaintiff continued to have left shoulder pain. *Id.* Dr. Bell performed a physical exam and reviewed some medical records and imaging, including an MRI of Plaintiff's left shoulder showing "diffuse rotator cuff tendinosis, some calcific tendonitis, and some AC joint arthritis." *Id.* at 3. Dr. Bell, however, did not specifically refer to any records from Dr. Maheshwari. *See id.*

Dr. Bell concluded that the imaging "revealed age-appropriate degenerative changes" that were "[u]nrelated to the motor vehicle accident." *Id.* at 4. He specifically opined that these were

not caused or worsened by the accident. *Id.* He noted that Plaintiff's "only ongoing complaint is a sense of 'tightness' in the left shoulder area coupled with discomfort when she attempts to internally rotate the abducted shoulder." *Id.* at 5. He concluded all of her diagnoses related to the accident had fully resolved, specifically noting as to her pre-existing conditions:

> There is no history of prior injuries, although the imaging clearly demonstrated a number of pre-existing arthritic conditions in the left shoulder. I would opine that there is no evidence that the motor vehicle accident exacerbated any of her pre-existing conditions. She sustained a shoulder strain/sprain.
>
> Despite her ongoing issue with internally rotating the abducted shoulder, I would opine she has essentially returned to baseline/pre-injury status. I would opine she has reached that status as of today's evaluation. There is no indication for any ongoing treatment. Her ongoing symptoms are a function of the underlying degenerative conditions, not the accident or any sequalae of the accident.

*Id.* He further opined that no further treatment was needed for Plaintiff's accident-related injuries. *Id.* at 6.

Defendant received the IME report a week after the exam. Craig Decl. Ex. 2, at 48–49. After reading the report, Ms. Craig drafted a denial of benefits letter to Plaintiff's attorney, citing Dr. Bell's opinions as the basis for Defendant's decision. *Id.* at 47–48. Ms. Craig's supervisor also reviewed and approved the denial letter. Craig Decl. Ex. 2, at 48; Staggs Decl. Ex. 21, at 112:19–24. The letter informed Plaintiff that all medical expenses incurred after the IME would not be paid because the medical coverage only covered treatment reasonable, necessary, and accident-related. Staggs Decl. Ex 11. Defendants paid for treatment through the date of the exam, ultimately paying the full amount of Plaintiff's PIP benefits and $2,656 of her Med Pay benefits. Staggs Decl. ¶ 18, Ex. 15; Craig Decl. ¶ 30.

Because of the denial, Plaintiff transitioned to in-network providers to treat her left shoulder pain. Pl.'s 2024 Dep. 29:2–20, 32:15–33:8; Pl.'s 2025 Dep. 26:16–27:20. The transition to new providers caused an eight-month delay in Plaintiff's care. Pl.'s 2025 Dep. 26:16–21,

35:20–22. The stress and worry from the delay and cessation of benefits caused Plaintiff to experience tension and headaches. Pl.'s 2025 Dep. 34:4–8, 35:8–19, 39:1–13, 48:16–49:3.

During this time, Plaintiff also sought to recover from the at-fault driver. Plaintiff sought $28,000 for past medical expenses, $59,873 for future medical expenses, and damages for her pain and suffering. Whiteley Decl. Ex. 12, at 47:19–48:4, 56:19-57:10; Whiteley Decl. Ex. 13. At the request of the driver's insurer—Allstate—Plaintiff attended another IME in 2024 with a different orthopedic surgeon, Joseph Mandiberg, M.D. Staggs Decl. Ex. 22, at 48:5–19, 49:15–17. Plaintiff testified that her experience with Dr. Mandiberg was markedly different from her IME with Dr. Bell. Pl.'s 2025 Dep. 56:20–58:13. For example, Dr. Bell's examination was "very cursory" and short. *Id*. at 24:1–24. Dr. Mandiberg's examination, by contrast, was more comprehensive as he had read her entire medical record and understood her case history. *Id.* at 57:1–25. Plaintiff ultimately settled her lawsuit with the at-fault driver for $130,000 on June 25, 2024. Staggs Decl. Ex. 22, at 60:10–12; Suppl. Staggs Decl. Ex. 38.

Defendant also sought to recover its PIP payments to Plaintiff from the at-fault driver's insurance through intercompany arbitration under Or. Rev. Stat. § ("ORS") 742.534. Staggs Decl. Exs. 6, 7. Defendant recovered the entire $15,000 in PIP benefits that they provided Plaintiff on July 10, 2024. Staggs Decl. Ex. 2, at 29.

Plaintiff filed the present case on June 28, 2024. Compl., ECF No. 1-3. In her original Complaint, Plaintiff brought a claim for breach of contract, seeking $7,615.82 in unpaid Med Pay benefits and $25,000 in non-economic damages. Compl. ¶¶ 14–16.

In December 2024, after obtaining new counsel, Plaintiff filed a First Amended Complaint adding a claim for negligence and alleging that Defendant's claim handling was unreasonable in violation of ORS 746.230. First Am. Compl., ECF No. 10. Plaintiff now seeks

$7,343.27 in economic damages and $2.5 million for noneconomic damages for her emotional distress. Second Am. Compl., ECF No. 37.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

The parties bring cross-motions for summary judgment on both of Plaintiff's claims and some of Defendant's affirmative defenses.[3] The Court first addresses Plaintiff's claim for breach of contract. The Court then turns to Plaintiff's claim for negligence and Defendant's associated Eighth Affirmative Defense, which alleges Plaintiff's negligence claim is untimely.[4] Finally, the Court addresses Defendant's Fifth Affirmative Defense on comparative negligence.

### I. Breach of Contract

In moving for summary judgment on Plaintiff's claim for breach of contract, Defendant argues that Plaintiff's claim fails because Plaintiff breached the subrogation provision of her policy in settling her claim with the at-fault driver and not preserving Defendant's subrogation rights to recover its Med Pay payments.[5] Def.'s MSJ 12–13. Plaintiff responds that she did not

[3] Defendant also moves to strike portions of Dr. Tella's expert report and all of Larry Bell's expert report. *See* Def.'s Mot. Strike, ECF No. 52-1. Because this evidence is not necessary for the Court to decide the parties' summary judgment motions, the Court declines to address Defendant's objections at this time. If necessary, the Court will set a briefing schedule to address any expert issues in advance of trial.

[4] Plaintiff also moves for summary judgment on whether her $8,473 unpaid medical expenses—of which only $7,343.24 would be reimbursed—consist of the "usual and customary charges for reasonable expenses" as required by the terms of the policy. *See* Pl.'s PMSJ 8–9. Defendant concedes this issue. Def.'s Resp. Pl.'s PMSJ 10 n.3, ECF No. 49.

[5] Defendant also argues that Plaintiff has no damages—an essential element of a claim for breach of contract—because she is required to reimburse Defendant for the claimed Med Pay

breach the contract because Defendant's subrogation rights for Med Pay benefits are barred by ORS 742.518 et seq., which allows Defendant to seek reimbursement for PIP benefits from the insurer of the at-fault driver. Pl.'s Resp. Def.'s MSJ 8–11, ECF No. 45. Plaintiff also argues that, even assuming Defendant's subrogation rights are not barred by state law, she did not breach the policy. Pl.'s Suppl. Br., ECF No. 57. The Court agrees with Defendant.

A. Med Pay & PIP Benefits

ORS 742.520(1)(a) requires insurers to provide PIP benefits in motor vehicle liability policies for any private passenger motor vehicle. *See also State Farm Mut. Auto. Ins. Co. v. Hale*, 215 Or. App. 19, 24, 168 P.3d 285 (2007) ("PIP coverage, which is, in essence, a type of no-fault insurance, is mandated by Oregon law to be included in any motor vehicle liability policy."). Under Oregon law, PIP benefits:

> [C]onsist of the following payments for the injury or death of each person:
>
> (a) All reasonable and necessary expenses of medical, hospital, dental, surgical, ambulance and prosthetic services incurred within two years after the date of the person's injury, but not more than $15,000 in the aggregate for all such expenses of the person. . . .
>
> (b) If the injured person is usually engaged in a remunerative occupation and if disability continues for at least 14 days, 70 percent of the loss of income from work during the period of the injured person's disability until the date the person is able to return to the person's usual occupation. This benefit is subject to a maximum payment of $3,000 per month and a maximum payment period in the aggregate of 52 weeks. . . .
>
> (c) If the injured person is not usually engaged in a remunerative occupation and if disability continues for at least 14 days, the expenses reasonably incurred by the injured person for essential services that were performed by a person who is not related to the injured person or residing in the injured person's household in lieu of the services the injured person would have performed without income during the period of the person's

---

benefits from her settlement. The Court need not address this argument in light of its finding that Plaintiff's breach of contract claim fails due to Plaintiff's breach.

> disability until the date the person is reasonably able to perform such essential services. This benefit is subject to a maximum payment of $30 per day and a maximum payment period in the aggregate of 52 weeks.
>
> (d) All reasonable and necessary funeral expenses incurred within one year after the date of the person's injury, but not more than $5,000.
>
> (e) If the injured person is a parent of a minor child and is required to be hospitalized for a minimum of 24 hours, $25 per day for child care, with payments to begin after the initial 24 hours of hospitalization and to be made for as long as the person is unable to return to work if the person is engaged in a remunerative occupation or for as long as the person is unable to perform essential services that the person would have performed without income if the person is not usually engaged in a remunerative occupation, but not to exceed $750.

ORS 742.524(1). The statute further provides that "[n]othing . . . is intended to prevent an insurer from providing more favorable benefits than the personal injury protection benefits described in" the statute. ORS 742.532.

ORS 742.534 allows an insurer to seek reimbursement for PIP benefits from the insurer of the at-fault driver. If the insurer does not request reimbursement from the at-fault driver's insurance, then its right to recover PIP payments from the insured is limited. ORS 742.534(5); *see also* ORS 742.538 (describing circumstances allowing reimbursement of PIP benefits from settlements between insured and at-fault driver). The PIP statutes, in essence, "assign the priority of claims to PIP benefits to favor remunerating the insured to the amount of his or her economic damages, rather than to assist PIP insurers in their own reimbursement." *Hale*, 215 Or. App. at 26 (quoting *Gaucin v. Farmers Ins. Co.*, 209 Or. App. 99, 108, 146 P.3d 370 (2006)).

As is relevant here, the policy at issue describes two types of benefits for medical coverage: PIP and Med Pay benefits. Under the terms of Plaintiff's policy, PIP benefits are "benefits to an insured who sustains 'bodily injury'" that is "caused by an accident" and "[a]rise[s] out of the ownership, maintenance, or use of a 'motor vehicle' as a 'motor vehicle.'"

Craig Decl. Ex. 1, at Q-1. Consistent with the statute, the PIP benefits in Plaintiff's policy with Defendant cover certain medical and hospital expenses incurred within two years of the accident, loss of income and services incurred within one year of the accident, funeral expenses, and child care expenses. *Id.* By contrast, under the terms of Plaintiff's policy, Med Pay benefits provide reimbursement for "reasonable expenses incurred for necessary medical and funeral services because of 'bodily injury': (1) Caused by an accident; and (2) Sustained by an 'insured'" that are incurred within three years from the date of the accident. *Id.* at MP-1. In other words, Plaintiff's Med Pay benefits are substantively more limited but cover expenses incurred over a longer period.

Based on the text and context of the statute—as well as the terms of the policy at issue—the Court finds that Med Pay is a distinct benefit from PIP and, therefore, is not subject to the statutory provisions on reimbursement of PIP described above.[6] *See State v. Gaines*, 346 Or. 160, 171, 206 P.3d 1042 (2009) (citing *Portland Gen. Elec. Co. v. Bureau of Lab. & Indus.*, 317 Or. 606, 610–11, 859 P.2d 1143 (1993)) (holding the first step under Oregon's statutory interpretation methodology is to look at the text and context of the statute). The statutes themselves specifically describe PIP as a distinct benefit from other "more favorable benefits" that an auto insurer may provide. *See* ORS 742.532. Nothing in the statutes indicates that these more favorable benefits would be subject to the same restrictions as PIP benefits. And the policy itself also reveals that Med Pay and PIP are distinct benefits. While PIP provides coverage for—among other things—medical expenses, lost income, and child care for one to two years after the

---

[6] The Court notes that—outside of citation to Oregon cases discussing the history of the PIP statutes, which the Court has reviewed—the parties here do not offer any pertinent legislative history. *See Gaines*, 346 Or. at 172 (noting that the parties are "free to proffer legislative history to the court").

accident, Med Pay covers only medical and funeral expenses but for a period of three years after an accident. *Compare* Craig Decl. Ex. 1, at MP-1, *with* Craig Decl. Ex. 1, at Q-1. Contrary to Plaintiff's argument, Med Pay is not just an extension of PIP. The Court therefore finds the PIP statutes do not apply to Med Pay benefits.

B. Plaintiff's Breach

In *Geertz v. State Farm Fire and Casualty*, the Oregon Supreme Court held that an insured's breach of a subrogation provision bars the insured from recovery under the insurance policy. 253 Or. 307, 451 P.2d 860 (1969). There, the plaintiffs-insureds requested that the defendant-insurer pay their medical expenses under a medical payment provision of their insurance policy, but the plaintiffs had already settled their claims and released the tortfeasor from liability. *Id.* at 308–09. The policy had a subrogation clause that provided: "Upon payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor and the insured shall do whatever is necessary to secure such rights and do nothing to prejudice them." *Id.* at 309. The Oregon Supreme Court ultimately concluded that, in light of the plaintiffs' settlement, the plaintiffs-insureds were barred from recovery: "It follows that if the insured has recovered his medical expense from the tortfeasor or if the tortfeasor has been released without consent of the insurer, the insured is barred from recovery under the policy." *Id.* at 311.

Similarly, here, the insurance policy contains the following subrogation provision:

> Our Right to Recover Payment
>
> A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we are subrogated to that right. That person must do:
>
> 1. Whatever is necessary to enable us to exercise our rights; and
>
> 2. Nothing after loss to prejudice them. . . .

> B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person must:
>
> 1. Hold in trust for us the proceeds of the recovery; and
>
> 2. Reimburse us to the extent of our payment.

Craig Decl. Ex. 1, at GP-4. There is no dispute that Plaintiff, like the plaintiffs in *Geertz*, settled her claims with the at-fault driver and released the driver from all claims. *See* Suppl. Stagg Decl. Ex. 38 (Release in Full of All Claims); *see also Nelson v. Liberty Ins. Corp.*, 314 Or. App. 350, 359, 498 P.2d 861 (2021) ("Generally, an insured's settlement with the tortfeasor—particularly one that releases the tortfeasor from further claims—results in the insurer's loss of its right to subrogation against the tortfeasor." (citation modified)). The settlement only excluded PIP benefits. Suppl. Stagg Decl. Ex. 38, at 1 ("Amounts paid as part of this agreement are exclusive of amounts paid as part of personal injury protection ('PIP') benefits."). Because Plaintiff prejudiced Defendant's right to recover payment, Plaintiff breached the subrogation provision and cannot sustain a claim for breach of contract under Oregon law. *See Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570, 927 P.2d 1098 (1996) (holding "[t]o state a claim for breach of contract, plaintiff must allege . . . plaintiff's full performance and lack of breach." (citation modified)).

Plaintiff also argues that Defendant's argument fails because (1) Defendant cannot establish the affirmative defense of noncooperation and (2) Defendant has waived or should be estopped from asserting its subrogation rights. Pl.'s Suppl. Br. 2–7. The Court disagrees.

Plaintiff's first argument about the defense of noncooperation is inapposite. Here, Defendant does not argue that Plaintiff breached the noncooperation provision of the contract, which appears to be a separate term under the policy. Craig Decl. Ex. 1, at GP-2 (describing

"Duties After an Accident or Loss," which include the duty to notify the insured of an accident and "[c]ooperate with [the insurer] in the investigation, settlement or defense of any claim or suit"); *see also State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Exch.*, 238 Or. 285, 288–89, 387 P.2d 825 (1963) (noting cooperation clause required the insured to "cooperate with the [insurer] and, upon [insurer's] request, . . . attend hearings and trials and . . . assist in affecting settlement, security and giving evidence, obtaining the attendance of witnesses and in the conduct of suit"); *Schalk v. Infinity Ins. Co.*, Case No. 3:20-cv-00615-YY, 2021 WL 1877976, at *2 (D. Or. April 16, 2021) (noting insurance policy provision requiring insured to "[c]ooperate with [the insurer] in the investigation, settlement or defense of any claim or suit" and to "[a]uthorize [the insurer] to obtain . . . [o]ther pertinent records").

And while the Oregon Supreme Court has held that there is a "general rule that an insurer must use due diligence to secure the cooperation of its insured," *State Farm*, 238 Or. at 287–88, the case law involving the noncooperation affirmative defense largely involves allegations that the insured breached a noncooperation clause by failing to provide information to the insurer, participate in an underlying investigation, or attend court proceedings, *see, e.g.*, *id.* at 287 (asserting defense of noncooperation where the insured failed to attend trial); *Rosalez v. Unigard Ins. Co.*, 283 Or. 63, 65, 581 P.2d 945 (1978) (alleging defense of failure to cooperate where the insured "fail[ed] to 'inform [the insurer] of his whereabouts and further fail[ed] to assist in making any settlement . . . , fail[ed] to give assistance in obtaining evidence and the attendance of witnesses, and fail[ed] to attend the hearing and trial"). The general rule recognized in *State Farm* and the relevant case law do not involve breach of a subrogation provision. *See Schalk*, 2021 WL 1877976, at *2 (noting "[c]ooperation is essential to the insurance relationship" because "[t]he insurer needs information pertaining to the circumstances and amount of loss, and

the insured needs information as to the status of its claim" (citation omitted)). *But see Armintrout v. Transp. Ins. Co.*, 137 Or. App. 86, 89, 903 P.2d 407 (1995) (holding that the "factual showing necessary to enforce a consent-to-settle provision" is "whether the insurer was prejudiced by the claimant's conduct" and "[i]f so, . . . whether the claimant nevertheless acted reasonably in breaching the consent-to-settle provision" (citation omitted)).

Plaintiff's arguments about waiver and estoppel also fail. "A waiver is the intentional relinquishment of a known right, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power." *Great Am. Ins. Co. v. Gen. Ins. Co. of Am.*, 257 Or. 62, 72, 475 P.2d 415 (1970) (citation omitted); *see also Alderman v. Davidson*, 326 Or. 508, 513, 954 P.2d 779 (1998) ("Waiver involves both knowledge and intention." (citation omitted)). Plaintiff argues that Defendant waived its subrogation right in its January 8, 2024 letter to Plaintiff and her attorney in which Defendant wrote: "We have filed arbitration to pursue reimbursement for the medical payments we made." Staggs Decl. Ex. 25. But the letter also provided "[a]s you are aware, we've been pursuing a subrogation claim against the insurance carrier of the party we believe is responsible for causing this loss," *id.*, and previous letters from Defendant specifically referred the statute governing reimbursement of PIP benefits, Staggs Decl. Ex. 7 (informing Plaintiff's counsel in February 2022 that Defendant "would like to pursue [its] subrogation interest under ORS 742.534"). Though it is usually for the jury to decide "whether the conduct of the party evidences a conscious and voluntary abandonment of some right or privilege," *Great Am. Ins. Co.*, 257 Or. at 73 (citation omitted), no reasonable jury could conclude that this letter amounted to an "intentional relinquishment" of Defendant's subrogation rights, *see Bennett v. Farmers Ins. Co. of Or.*, 332 Or. 138, 157, 26 P.3d 785 (2001) (finding

"waiver must be unequivocal"). On these facts, the Court finds that Defendant did not waive its subrogation rights.

Similarly, "[e]stoppel precludes a person, based on the person's acts . . . from asserting a right that otherwise would have been available." *Nelson v. Liberty Ins. Corp.*, 314 Or. App. 350, 359, 498 P.3d 861 (2021) (quoting *Deardorff v. Farnsworth*, 268 Or. App. 844, 849, 343 P.3d 687 (2015)).

> To constitute an equitable estoppel, or estoppel by conduct, (1) there must be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Id.* (quoting *Guardian Mgmt., LLC v. Zamiello*, 194 Or. App. 524, 530, 95 P.3d 1139 (2004)). Here, even assuming Plaintiff could show Defendant made a false representation in the January 2024 letter, Plaintiff has failed to produce any evidence that Defendant's representation induced Plaintiff to settle her claims. *See Bennett*, 332 Or. at 158 ("If there is no evidence of an intent to waive a contract provision, a party nevertheless may be estopped from relying on that provision if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver."). Indeed, Plaintiff's then-counsel, Ms. Welch, merely states that she believed she was protecting Defendant's right to pursue reimbursement of medical payments by exempting PIP payments from the settlement, not that she was mislead by Defendant. *See* Welch Decl. ¶ 3, ECF No. 59; *see also* Staggs Decl. Ex. 22, at 63:15–65:5. Accordingly, the Court grants Defendant summary judgment on Plaintiff's breach of contract claim.[7]

---

[7] Plaintiff also moves for summary judgment on Defendant's Fourth and Ninth Affirmative Defenses, both of which relate to Plaintiff's breach of contract claim. Pl.'s PMSJ 10, 17–20. Because Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract, the Court finds that it does not need to reach either affirmative defense and denies Plaintiff's Motion for Summary Judgment on those grounds.

**II. Negligence**

Defendant makes three arguments in moving for summary judgment on Plaintiff's claim for negligence. First, Defendant argues that Plaintiff filed her claim for negligence outside the statute of limitations. Second, Defendant argues that Plaintiff's claim is not a viable tort under the Oregon Supreme Court's decision in *Moody v. Oregon Community Credit Union*, 371 Or. 772, 542 P.3d 24 (2023). Finally, Defendant argues that Plaintiff's negligence claim fails on the merits. Plaintiff also moves for partial summary judgment on Defendant's statute of limitations defense as it relates to Plaintiff's negligence claim. The Court first addresses the statute of limitations issue and then turns Defendant's remaining arguments.

A. Statute of Limitations

Defendant argues—and alleges in its Eighth Affirmative Defense—that Plaintiff's claim for negligence is time-barred. Def.'s MSJ 13–19. Defendant notes that Plaintiff's claim for negligence was added to her First Amended Complaint, which was filed over two years after she received her denial letter from Defendant. *Id.* at 14. Plaintiff responds that (1) Plaintiff's claim did not accrue until she received Dr. Mandiberg's report in 2024 identifying issues with Dr. Bell's opinion; (2) that Plaintiff intended to bring a claim for negligence in her original Complaint by seeking emotional distress damages; and (3) that Plaintiff's claim for negligence relates back to the initial filing of the Complaint, which is within the two-year limitations period. Pl.'s Resp. Def.'s MSJ 12–19; Pl.'s PMSJ 12–16 (moving for partial summary judgment on Defendant's Eighth Affirmative Defense).

Even assuming that Plaintiff's claim accrued at the time of the denial letter in September 2022, Plaintiff's claim for negligence relates back to the filing of the original Complaint and is therefore timely. "An otherwise time-barred claim in an amended pleading is deemed timely if it

relates back to the date of a timely original pleading." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Under Federal Rule of Civil Procedure 15, "[a]n amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[8] Fed. R. Civ. P. 15(c)(1)(B). "An amended claim arises out of the same conduct, transaction, or occurrence if it 'will likely be proved by the same kind of evidence offered in support of the original pleading.'" *ASARCO*, 765 F.3d at 1004 (quoting *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988)). In other words, the court considers whether "the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989). Rule 15(c) is "liberally applied." *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966) (finding that a claim adding a claim of unpaid wages for an additional pay period related back to the original complaint).

Here, applying Rule 15 liberally, the Court finds that Plaintiff's claim of negligence arises out of the same transaction or occurrence as the original claim for breach of contract. Plaintiff's breach of contract claim originally alleged that Defendant breached the policy when it failed to pay medical expenses after September 12, 2022, the date of the IME with Dr. Bell. Compl. ¶ 12. Plaintiff also alleged that she "suffered emotional distress and worry due to the potential financial strain caused by the refusal to pay medical expenses pursuant to the policy and Oregon law." *Id.* ¶ 16. Similarly, in support of Plaintiff's claim for negligence, Plaintiff

[8] Rule 15 also allows an amendment to a pleading to relate back when "the law that provides the applicable statute of limitations"—here, Oregon law—"allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The Court need not address Oregon law because federal law allows relation back in this case.

points to the IME with Dr. Bell and alleges she experienced emotional distress due to stress and financial strain from Defendant's failure to pay. FAC ¶¶ 22, 24–25. In sum, the evidence related to Plaintiff's breach of contract claim is the same as the evidence needed to prove Plaintiff's negligence claim. Because the claims share a common core of operative facts and Defendant had fair notice of the conduct called into question, Plaintiff's negligence claim relates back to the date of the original Complaint and is timely.

B. Application of *Moody*

Defendant argues that *Moody* does not support extending negligence liability to this case. Def.'s MSJ 19–24. To state a negligence claim under Oregon law, a plaintiff must prove "that defendant engaged in conduct that 'unreasonably created a foreseeable risk to a *protected interest* of the kind of harm that befell the plaintiff.'" *Moody*, 371 Or. at 783 (quoting *Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987) (emphasis added)). Once a common-law negligence claim has been established, the doctrine of "negligence per se" permits a plaintiff to create "a presumption of negligence" by pointing to a violation of a statute or rule that defines the standard of care expected of a reasonably prudent person under the circumstances. *Id*. at 782 (quoting *Deckard v. Bunch*, 358 Or. 754, 761 n.6, 370 P.3d 478 (2016)). The burden then "shifts to the violator to prove that he or she acted reasonably under the circumstances." *Deckard*, 358 Or. at 761 n.6. The plaintiff must still, however, establish the other elements of negligence. *Id*.

Generally, individuals do not have a legally protected interest in being free from emotional distress. *Moody*, 371 Or. at 784. But Oregon permits recovery for emotional distress damages in limited circumstances including, for example, "when the defendant 'negligently

causes foreseeable, serious emotional distress and also infringes some other legally protected interest.'" *Id.* (quoting *Philibert v. Kluser*, 360 Or. 698, 702, 385 P.3d 1038 (2016)).

In *Moody*, the Oregon Supreme Court considered whether a life insurance beneficiary stated a cognizable negligence claim for emotional distress damages based on a first-party life insurer's alleged violation of Oregon law prohibiting unfair settlement practices, specifically ORS 746.230(1)(d) and (f), for failing to reasonably investigate and pay her claim for policy benefits. 371 Or. at 775. In evaluating whether the beneficiary asserted a legally protected interest sufficient to recover emotional distress damages, the court outlined several factors, including whether the Oregon statute indicates the existence of a legally protected interest, the nature of the parties' relationship, the burden on the defendant, the risk of a serious emotional injury, and whether the plaintiff's interest is of serious importance as a matter of public policy. *Id*. at 790–804. Balancing these factors, the court concluded that "the insurance claim practices that ORS 746.230 requires and the emotional harm that foreseeably may occur if that statute is violated are sufficiently weighty to merit imposition of liability for common-law negligence and recovery of emotional distress damages." *Id*. at 805; *see Dailey v. Univ. of Portland*, 340 Or. App. 80, 91, 569 P.3d 1027 (2025) (explaining that *Moody* concluded that "the plaintiff had stated an actionable negligence claim for emotional distress damages" based on the "premise that the *statute* on which the plaintiff relied reflected a legislative intent to protect the plaintiff's peace of mind") (emphasis added)).

Although *Moody's* holding was expressly limited to avoid making "every statutory violation the basis for a common-law negligence claim for emotional distress damages," 371 Or. at 806, several decisions in this district have extended *Moody*'s holding to negligence claims based on alleged violations of ORS 746.230 outside the life insurance context, *see, e.g.*, *Oregon*

*Aero Inc. v. Navigators Ins. Co.,* No. 3:21-CV-01178-AN, 2025 WL 965789, at *6 (D. Or. Mar. 31, 2025) (holding "based on [*Moody's*] analysis that other types of damages claims are now cognizable under a negligence *per se* theory based on the standard of care set forth in ORS § 746.230"); *Liquid Agents Healthcare, LLC v. Evanston Ins. Co.,* No. 1:20-CV-02225-CL, 2024 WL 4874288, at *4 (D. Or. Oct. 30, 2024) (finding that *Moody* negligence liability extends to a commercial insurer that was allegedly "negligent in four extracontractual ways, prohibited by ORS 746.230(1), which led to foreseeable economic damages"), *report and recommendation adopted*, 2025 WL 1361758 (D. Or. May 9, 2025); *Mohammad v. Liberty Ins. Corp.*, No. 1:23-CV-000691-CL, 2024 WL 4627462, at *1 (D. Or. Oct. 30, 2024) (finding that a plaintiff can maintain a negligence per se claim against his homeowner's insurance company under *Moody* for emotional distress damages based on violations of ORS 746.230). *But see Lott v. Liberty Ins. Corp.*, 3:24-cv-00524-YY, 2026 WL 323081, at *7 (D. Or. Feb. 6, 2026) (finding the plaintiff could not sustain a claim for negligent infliction of emotional distress against her insurer in a claim involving a personal property insurance claim that lacked "'objective indicators of possibly serious emotional injury' and broader societal impact that were present in [*Moody*]").

The Court finds that Plaintiff can likely bring a common-law negligence claim in this case. This case involves the same statutory scheme involved in *Moody* and that the Oregon Supreme Court found indicated the existence of a legally protected interest. As described by the court in *Moody*, ORS 746.230 was designed to "protect insureds and their beneficiaries from the type of emotional harm" at issue in this case. 371 Or. at 797. And, as in *Moody*, this case involves a contractual relationship in which Defendant undertook to provide Plaintiff with certain insurance benefits under a contract. *Id.* at 800. The risk to Defendant of unanticipated liability is low. *Id.* at 801.

And while this case does not involve life insurance, it does involve the provision of medical benefits coverage after an accident such that there are "objective indicators of possibly serious emotional injury." *Id.* at 787. PIP and Med Pay—like life insurance—are intended to "provide peace of mind and necessary resources" for an individual injured in a car accident. *Id.* at 804. Indeed, PIP benefits are important enough that all auto insurance policies must include them in the State of Oregon. *See* ORS 742.520(1)(a). An insurer's unreasonable denial—or cessation of—these benefits has the potential to cause serious emotional injury.

Finally, Plaintiff's interest is of significant importance. The Court recognizes that this case involves a cessation—as opposed to a complete denial—of benefits. But the Oregon Supreme Court did not evaluate the sustainability of a negligence claim at such a granular level. Rather, the court asked whether the "claimed harm is 'of sufficient importance as a matter of public policy,'" looking to the impact of life insurance proceeds and claims processing on society as a whole. *Moody*, 371 Or. at 804 ("Requiring reasonable investigation and prompt payment of such proceeds benefits not only those in plaintiff's shoes, but also society at large."). Here, too, requiring the reasonable investigation and payment of medical benefits after an automobile accident benefits both Plaintiff and the public. These benefits provide access to immediate medical care for individuals suffering from serious injuries. When an individual "incurs serious emotional distress as a result of the violation of [the] statutes, the harm and the statutory purpose are of sufficient importance to merit protection." *Id.* at 804. In sum, the Court sees no reason to depart from the *Moody* court's analysis here, and Defendant's Motion for Summary Judgment on this basis is denied.

///

///

C. Negligence Under ORS 746.230

Defendant also moves for summary judgment on the merits of Plaintiff's negligence claim. Def.'s MSJ 24–28. Plaintiff alleges that Defendant was negligent in three ways. First, Plaintiff alleges that Defendant violated ORS 746.230(1)(d) by refusing to pay benefits without conducting a reasonable investigation. SAC ¶ 27(a). Second, Plaintiff alleges Defendant violated ORS 746.230(1)(f) by failing to promptly and equitably settle claims in which liability is reasonably clear. SAC ¶ 27(b). Finally, Plaintiff alleges Defendant violated ORS 746.230(1)(g), which prohibits "[c]ompelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered." SAC ¶ 27(c). But the core of Plaintiff's allegations here is Defendant's allegedly unreasonable reliance on Dr. Bell's IME to deny coverage. Pl.'s Resp. Def.'s MSJ 30.

The Court first addresses Plaintiff's theories that Defendant violated ORS 746.230(1)(f) and ORS 746.230(1)(g). Subsection (f) prohibits insurers from "[n]ot attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear." But Plaintiff does not allege that Defendant failed to *settle* claims after its liability became clear. *See Harris v. Safeco Ins. Co. of Ill.*, Case No. 3:22-cv-1346-SI, 2025 WL 2663128, at *10 (D. Or. Sept. 17, 2025) (emphasizing subsection (f) relates to settlement and finding "no authority for the proposition that failing to provide *advance* payments on a claim constitutes failing to *settle* a claim"). Rather, Plaintiff alleges Defendant ceased paying her insurance benefits after they conducted a negligent investigation into her claim and relied on a deficient IME to find she had recovered from her injuries. Similarly, subsection (g) prohibits insurers from "[c]ompelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered in actions brought by such claimants." But again, Plaintiff provides no

evidence of an offer by Defendant before Plaintiff filed suit. *See id.* at *11 (holding subsection (g) "does not prohibit compelling an insured to file a lawsuit by engaging in various claim practices—it prohibits compelling an insured to file suit by offering a lowball settlement amount" and emphasizing that the plaintiffs "filed suit before [the defendant] tendered any settlement offer"). Thus, neither of these provisions are applicable here, and the Court finds as a matter of law Plaintiff cannot show violations of either subsection (f) or (g).

Turning to ORS 746.230(1)(d)—which prohibits "[r]efusing to pay claims without conducting a reasonable investigation based on all available information"—the Court finds that a reasonable jury, when viewing the facts in the light most favorable to Plaintiff, could find that Defendant's actions violated subsection (d) of the statute. Specifically, Plaintiff has submitted evidence that Ms. Craig knew both that Plaintiff did not have a preexisting shoulder condition and that Plaintiff's own doctor did not believe Plaintiff's degenerative condition was the cause of her pain. Staggs Decl. Ex. 5, at 2, 4–5; Craig Decl. ¶ 12, Ex. 2 at 59–60, 68. Based on this knowledge, a reasonable jury could conclude that Ms. Craig should have had concerns with Dr. Bell's opinion, which omitted any reference to Dr. Maheshwari's records; was incomplete in ascribing Plaintiff's ongoing symptoms to her previously asymptomatic preexisting conditions without any explanation for his reasoning; and was internally inconsistent in acknowledging Plaintiff's ongoing pain while finding she had returned to baseline status. *See* Staggs Decl. Ex. 10, at 3, 5. Viewed in the light most favorable to Plaintiff, Ms. Craig's investigation—which relied on Dr. Bell's IME—was not reasonable.

The Court acknowledges that Defendant's adjuster relied on the opinion of a board-certified, independent physician when it decided to cease paying Plaintiff's Med Pay benefits. This Court's decision should not be construed to imply that an insurer can never rely on an IME

or that claim adjusters—without medical training—must always second-guess a physician's opinion. Rather, the Court finds that under the very specific facts of this case, Ms. Craig's reliance on Dr. Bell's opinion was not reasonable such that a jury could conclude that Defendant refused to continue paying Plaintiff's insurance claim "without conducting a reasonable investigation based on all available information." ORS 746.230(1)(d).

Defendant makes two additional arguments in moving for summary judgment on Plaintiff's negligence claim. First, Defendant appears to argue that Plaintiff's injury wasn't foreseeable:

> [N]either [Plaintiff] or her attorney questioned or complained about Dr. Bell's opinion or [Defendant's] decision based upon it for almost two years, and not until [Plaintiff] filed suit against [Defendant]. Consequently, [Defendant's] adjusters had no reason to foresee that discontinuing benefits would expose [Plaintiff] to any risk of harm, much less an unreasonable one.

Def.'s MSJ 26. The Court disagrees. It is entirely foreseeable that Defendant's unreasonable investigation into and failure to pay an insurance claim could cause an individual to suffer the harm that Plaintiff has suffered here. This is not one of those exceptional cases in which the Court—rather than the fact finder—should find foreseeability as a matter of law. *See Donaca v. Curry Cnty.*, 303 Or. 30, 38, 734 P.2d 1339 (1987).

Second, Defendant argues that the "Genuine Dispute Rule" should apply here. *See* Def. MSJ. 26; Pl.'s Resp. Def.'s MSJ 37. The Rule is a defense to bad faith claims arising under a contract, allowing an insurer to win at summary judgment where "there existed a genuine issue as to the insurer's liability." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (citation modified). Neither party has identified an Oregon case applying the Rule, and the Court finds none. The Court declines to extend this rule to negligence claims arising under Oregon law.

Therefore, Defendant's Motion for Summary Judgment is granted on Plaintiff's claims under ORS 746.230(1)(f) and (g) and denied as to subsection (d).

## III. Defendant's Fifth Affirmative Defense

Plaintiff also moves for summary judgment on Defendant's Fifth Affirmative Defense, arguing that comparative negligence is inapplicable to negligence claims like the one at issue here.[9] Pl.'s PMSJ 10–12. Defendant disagrees and argues that Plaintiff was negligent by (1) failing to challenge or seek reconsideration of Defendant's September 2022 decision; (2) waiting until 2024 to sue Defendant; and (3) deferring suit against the at-fault driver until July 2023 and, thus, delaying the eventual settlement that could have relieved some of her financial stress. Def.'s Resp. Pl.'s PMSJ 20–21.

As a preliminary matter, the Court declines to find that—as a matter of law—comparative negligence is inapplicable here. "Under comparative fault, a plaintiff whose own negligence contributed to the injury can still recover, so long as the defendant's negligence was greater than the plaintiff's negligence . . . ." *Miller v. Agripac, Inc.*, 322 Or. App. 202, 209, 518 P.3d 957 (2002). Whether comparative fault applies to negligence per se claims—particularly those brought under *Moody*—appears to be an open question under Oregon law. Absent direction to the contrary, the Court sees no reason why the comparative fault statute would not apply to this negligence case. *See Becker v. Port Dock Four, Inc.*, 90 Or. App. 384, 390–91, 752 P.2d 1235 (1988) (finding that comparative negligence was available as a defense in a legal malpractice case where the plaintiffs "failed to read a document before signing it and, as a possible result,

[9] The parties do not dispute that comparative negligence does not apply to Plaintiff's claim for breach of contract.

neglected to call the lawyer's attention to the fact that he had omitted data which was very much within [the] plaintiffs' knowledge").

Whether Plaintiff is entitled to summary judgment on the merits of Defendant's affirmative defense is a closer question. But the Court finds that whether Plaintiff failed to "take reasonable measures which might have prevented or reduced the injury" is more appropriate for the trier of fact and therefore denies Plaintiff's Motion for Summary Judgment. *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 509, 244 P.3d 835 (2010).

**CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment [40] and DENIES Plaintiff's Partial Motion for Summary Judgment [41]. Plaintiff's claim for breach of contract is dismissed with prejudice.

IT IS SO ORDERED.

DATED this 5th day of November, 2026.

Amy M. Baggio

AMY M. BAGGIO
United States District Judge